IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
TEXARKANA DIVISION

RICHARD EUGENE LEATHERWOOD                                    PLAINTIFF

v.                              Civil No. 4:20-cv-04061

NURSE STEPHEN KING; NURSE LONI
REDFERN; AND NURSE CHELSEA                                    DEFENDANTS

**MEMORANDUM OPINION**

This is a civil rights action filed *pro* se by Plaintiff, Richard Eugene Leatherwood, under

42 U.S.C. § 1983.   On September 9, 2020, the parties consented to have the undersigned conduct

all proceedings in this case including a jury or nonjury trial and to order the entry of a final

judgment in accordance with 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73.  (ECF No. 10).  Before

the Court is a Motion for Summary Judgment filed by Defendants.  (ECF No. 40).  Plaintiff filed

a Response to the motion on February 11, 2021.  (ECF Nos. 59, 60).  The Court finds this matter

ripe for consideration.

**I. FACTUAL BACKROUND**

Plaintiff is currently incarcerated in the Miller County Detention Center ("MCDC") in

Texarkana, Arkansas.  His claims in this action arise from an alleged denial of medical care at the

MCDC between June and October of 2020.  (ECF No. 1, pp. 4-5).

Plaintiff was booked into the MCDC on June 18, 2020.  (ECF No. 41-2, p. 1).  At the time

of booking Plaintiff had a pre-existing stab wound to his lower posterior lateral chest/flank area

which was inflicted on May 29, 2020.  (*Id.* at p. 6).

On June 20, 2020, at 9:48 a.m., Plaintiff submitted his first medical request stating, "I

NEEED  MEDICAL  HELP".  (ECF No. 60, p. 9).  Before receiving any response, Plaintiff

1

submitted a second medical request at 10:27 a.m. stating, "I HAVE AIR POCKET COMING UP ON MY LUNG AND THIS IS GETTING SERIOUS I NEED HELP". (ECF No. 60, p. 10). In response to his complaint, Plaintiff was seen and evaluated by nurse Defendant Redfearn that same day. (ECF Nos. 41-2 at p. 3-4, 41-3 at p. 1). Plaintiff's temperature and oxygen saturation were normal. Defendant Redfearn contacted the jail medical provider, who ordered that Plaintiff be taken to Wadley Regional Medical Center for x-rays. *Id.*

The following day, Plaintiff was transported to Wadley Regional Medical Center for chest x-rays. The x-ray reports showed no gross lung findings in the chest and no fractures. (ECF No. 41-2, p. 7). That same day, Plaintiff was prescribed 50 mg of Tramadol[1] for seven days as needed for the pain associated with his lung and shoulder complaints. (ECF No. 41-2, p. 5).

On June 24, 2020, Plaintiff submitted a medical request at 8:31 a.m. stating, "KING I WAS AT MY DOOR WAITING THIS MORNING AND YOU NEVER CAME UP". (ECF No. 60, p. 11). At 3:15 p.m. medical noted that the "Request was closed without a response." *Id.* The MCDC's Medical Administration Record for Plaintiff shows he received both doses of his prescribed medication that day. (ECF No. 41-2, p. 20).

On June 28, 2020, at 9:53 a.m., Plaintiff submitted another medical request stating, "can I please have the medicine that you was sapposed to give me this morning but never do. Please im hurting". (ECF No. 60, p. 12). On the medical request is a handwritten notation which reads, "Received medication LR". *Id.* The notation is not dated, and the status of the medical request is listed as "OPEN". *Id.* The MCDC's Medical Administration Record for Plaintiff indicates he

---

[1] Tramadol is a synthetic opioid pain reliever.

received only one of two doses of his prescribed medication on June 26 and June 28.  (ECF No. 41-2, p. 20).

On June 29, 2020, Plaintiff submitted the following grievance:

> READ MY MEDICAL REQUEST. THERE IS PROOF IVE BEEN DENIED MEDICAL HELP. DR TOLD ME AT HOSPITAL PAIN GETS ANY WORSE TO COME BACK IMMEDIATELY. IVE ASKED FOR THE HELP TO ALL THE NURSES BUT BEEN DENIED. STILL IN MAJOR PAIN AND NEVER GAVE MY MEDS WHEN IVE ASKED. THEY WAIT WAY T LONG AND LEAVE ME HURTING FOR HOURS UP ON HOURS. PLUS MY PAIN AND INJURIES ARE TEN TIMES WORSE AFTER THE GURDES DRUG ME DOWN THE HALL WITH ARMS BEHIND MY BACK WHEN IM SCREAMING FOR HELP THE WHOLE TIME AND BEGGING TO STOP BUT THE

(ECF No. 60, p. 13).[2]

On June 30, 2020, Plaintiff submitted a medical request complaining, "my right lung is hurting. And can I please receive my meds like im sapposed to".  (ECF No. 60, p. 14).  It does not appear Defendants responded to this request.  However, the MCDC's Medication Administration Record for Plaintiff shows he received both doses of his pain medication that day.  (ECF No. 41-2, p. 20).

On July 1, 2020, Plaintiff again complained of pain in a medical request.  (ECF No. 41-2, p. 24).  In response to Plaintiff's complaint, he was scheduled to undergo a computed tomography ("CT") of his chest at Healthcare Express.  *Id.* The following day, Plaintiff was placed on Ibuprofen 600 mg three times a day for fourteen days for pain.  (ECF No. 41-2, p. 5).

On July 3, 2020, Plaintiff underwent a CT of his chest.  (ECF No. 41-2, p. 10).  The study showed no post-traumatic abnormality and revealed small nodules in both lungs, which were described as possible early multifocal pneumonitis.  The report also noted "Metastatic disease is

---

[2] Plaintiff has not alleged any claims for excessive force in the instant lawsuit.

believed to be unlikely but not excluded. Additional clinical history recommended with consideration of three-month surveillance CT." (ECF No. 41-2, p. 9).

On July 9, 2020, Plaintiff was seen by the jail medical provider who noted Plaintiff had no chest pain or shortness of breath at that time and Plaintiff denied any other symptoms. Plaintiff's lungs were noted to be clear to auscultation. The pulmonary nodules were noted on the CT report, but no treatment was ordered. However, the medical provider ordered a repeat chest CT in three months. (ECF No. 41-2, p. 11).

On July 10, 2020, at 8:51 a.m., Defendant King responded to Plaintiff's grievance dated June 29, 2020, stating, "Grievance is 2 weeks old. You've been seen by medical since this submittal. (ECF No. 60, p. 13).

On July 11, 2020 at 5:27 p.m., Plaintiff submitted a grievance stating:

On 7/11/20 I have pain in my chest rib area etc ive got a stab wound an a calapsed lung an my liver an im needing medical treatment I asked the guard that was on duty C.O.Lee for a medical sickcall paper cause the one on the kiosh was already off an he went to medical to get one mrs loni redfern told C.O.lee that she wasn't seeing no one she denied me medical treatment an that's a violation of my civil rights an that's inadiquit medical treatment as she failed to do her job as medical staff.

(ECF No. 60, p. 15). On July 13, 2020, MCDC staff forwarded the grievance to medical. *Id.* That same day, medical responded stating, "seen by medical since this submission". *Id.* (ECF No. 60, p. 15).

On July 12, 2020, at 9:45 a.m., Plaintiff submitted a health service request stating, "my insides are hurting". (ECF Nos. 41-2 at p. 25, 60 at p. 16). In response Defendant Redfearn replied, "After reading your request, we're having hard time figuring out what your complaint is. Please resubmit stating exactly what you would like to be seen for." *Id.* At 10:10 a.m. Plaintiff submitted a second request saying "it…could be my lungs since I have an infectin in both

lungs…im asking to be taken to emergency so I can get the proper medical help. MY INSIDES HURT." *Id.* at p. 26. Just over thirty minutes later, Plaintiff submitted another request stating he tried to get medical help the previous day, but medical refused to see him. (ECF No. 41-2, p. 27). Defendant Redfearn responded one minute later asking, "When did you try to get medical help?" *Id.* Plaintiff was seen and evaluated that same day by Loni Redfearn within minutes after receiving Plaintiff's requests. She noted Plaintiff's lungs were clear bilaterally and his temperature and oxygen saturation were normal. (ECF Nos. 41-2 at pp. 12-13, 41-3 at p. 1).

On July 13, 2020, MCDC staff forwarded Plaintiff's July 11, 2020 grievance to medical. (ECF No. 41-2, p. 16). That same day, medical responded stating, "seen by medical since this submission". *Id.* (ECF No. 60, p. 15).

On July 16, 2020, the day after Plaintiff's initial Ibuprofen prescription expired, Plaintiff was placed on Ibuprofen 800 mg twice a day for thirty days for pain. (ECF No. 41-2, p. 19).

On July 17, 2020, Plaintiff submitted a grievance at 12:22 p.m. stating:

I have an infection on each lung. The nurses refused to tell me and lied to me when I asked. Im not receiving the proper medical help I need. Im scared im going to die in miller county jail. A infection on each lung and one is way bigger than the other. And im not receiving any antibiotics or any medications I truly need.

(ECF No. 60, p. 19). An MCDC officer responded on July 20, 2020 at 12:30 p.m. stating, "I have forwarded your request to the appropriate authority [medical]. *Id.* The following day at 9:50 a.m., Defendant King responded stating, "You have received outstanding medical care while at Miller County and will continue to do so." *Id.*

On July 25, 2020, Plaintiff placed a health service request stating he was "not breathing right and my right side feels stiff." (ECF No. 41-2, p. 28). Plaintiff was seen and evaluated by Defendant Redfearn that same day. (ECF No. 41-3, p. 2). Except for a slightly elevated pulse

rate, his vital signs were normal.  Plaintiff was noted to be in no distress and his temperature and oxygen saturation were normal.  (ECF No. 41-2, pp. 14-15).

On July 26, 2020, at 9:01 a.m., Plaintiff placed a health service request stating he was still having breathing issues and his "inside is feling worse. Since yu refuse to help me can I please be taken to the hospital. You refused to help me yesterday and my issues are worse today".  (ECF Nos. 41-2 at p. 29, 60 at p. 21).  In response to this request Plaintiff was seen and evaluated by Defendant Redfearn that same day.  (ECF No. 41-2 at p. 30).  Plaintiff's lungs were noted to be clear bilaterally, and his vital signs were normal.  (ECF Nos. 41-2 at pp. 17-18, 41-3 at p. 2).

On July 26, 2020, Plaintiff submitted a grievance stating, "yesterday I put in a sick call because I was having a hard time breathing. Nurse seen me but refused to help me in any other way. Today my condition is worse so I put in another sick call and the nurse did the same. Seen me but refused to help me in anyway." (ECF No. 60, p. 22).  The following day Defendant King responded stating, "You have been placed on medical observation on 7-27-20".  *Id.*

On August 5, 2020, Plaintiff filed the instant lawsuit naming Nurses Steven King, Loni Redfearn, and Chelsey Foster as Defendants.[3]  (ECF No. 1).

On October 6, 2020, Plaintiff submitted a grievance stating, "when I seen the dr. here he stated that if im here in three months I need to go back to health care express and have another cat scan done to check the infection on my lungs. Ive been here 115 days and the nurses failed to have me taken to the dr. and have the cat scan done."  (ECF No. 60, p. 5).  On October 8, 2020, MCDC staff forwarded the grievance to medical.  *Id.*  On October 12, 2020, Defendant King responded to Plaintiff's grievance stating:

Your appointment has already been set. You will not be told when it is.

---

[3] Defendants Redfearn and Foster are referred to as "Loni Redfern" and "Nurse Chelsea" in the case caption.

> And for your general fund of knowledge, it's been 96 days since the doctor ordered a follow up CT scan in 3 months, so you being here 115 days is irrelevant (means it doesn't matter).  You actually submitted this grievance on exactly the 90 day mark (July 9th, when the order was written, thru (ct 6th, day of this grievance).  We obviously know you inmates track stuff like this very carefully so we would never schedule an outside appointment where the inmate would know when they would be out of the facility.  Inmates have planned escapes during situation like that…

(ECF No. 60, p. 5).

On October 14, 2020, Plaintiff underwent his follow up CT scan which revealed the nodule in Plaintiff's left lung had resolved.  (ECF No. 41-2, p. 31).  The procedure showed mild dependent atelectasis.[4]  The medical provider determined that no treatment was necessary for the mild atelectasis.  (ECF No. 41-1, p. 2).

On October 16, 2020, Plaintiff submitted the following medical request: "been feeling the liquid in my lung the past two weeks and keeps getting worse slowly. Been trying to cough it uo like I was told and its not working. Any advice would be greatly appreciated. Thanks." (ECF No. 60, p. 6).  That same day, Defendant King responded within minutes of receiving the request, stating "You had a lung/chest CT scan 3 days ago. Doctor reviewed it and your results were great. You are all clear." *Id.*

At no time during his incarceration at the MCDC was Plaintiff noted to have fever or decreased oxygen saturation.  (ECF No. 41-2, p. 2).  In addition, there is no evidence to suggest Plaintiff ever contracted Covid-19 while housed at the MCDC nor is there any evidence Plaintiff suffered permanent lung damage.  *Id.*

---

[4] Atelectasis is a complete or partial collapse of the entire lung or area (lobe) of the lung.  It occurs when the tiny air sacs (alveoli) within the lung become deflated or possibly filled with alveolar fluid.  Atelectasis is one of the most common breathing (respiratory) complications after surgery.  It is also a possible complication of other respiratory problems, including cystic fibrosis, lung tumors, chest injuries, fluid in the ling and respiratory weakness.  *See* https://www.mayoclinic.org/diseases-condition/.

At all times relevant, Defendants were nurses employed by Southern Health Partners, Inc. ("SHP").  (ECF Nos. 41-1, 41-3, 41-4).  As nurses, Defendants did not have the prescriptive authority to prescribe antibiotics, and no antibiotics were prescribed for Plaintiff's lung condition by the jail's medical provider, physicians at Wadley Hospital, or Heathcare Express.  *Id.*

According to their affidavits, Defendants King, Redfearn, and Foster provided Plaintiff with appropriate and timely nursing care.  (ECF Nos. 41-1, 41-3, 41-4).  In addition, Defendants state they never refused to see Plaintiff or refused to provide healthcare services to him.  (ECF Nos. 41-1, 41-3, 41-4).

According to the affidavit of Defendant King, no policy or custom of SHP prevented or prohibited treatment of Plaintiff's lung condition.  (ECF No. 41-1, p. 2).

## II. PROCEDURAL BACKGROUND

Plaintiff filed his initial Complaint on August 5, 2020, naming Nurses Steven King, Loni Redfearn, and Chelsey Foster as Defendants.  (ECF No. 1).  At that time, Plaintiff states he was in jail awaiting trial on pending criminal charges "5 felony charges and 2 probation violations".  *Id.* at p. 3.  On August 24, 2020, Plaintiff filed a Supplement to his Complaint listing various medical requests and grievances he submitted.  (ECF No. 7).  On December 28, 2020 Plaintiff filed a "Supplement of Complaint" referencing two additional grievances: 6,908,334 and 6,904,577. (ECF No. 36).  He is seeking compensatory and punitive damages and is suing Defendants in their individual and official capacities.  (ECF No. 1, pp. 4-5).

Plaintiff describes his individual capacity claim as "Denial of medical care, pain & suffering, Improper medical care, bodily harm, permanent damage to my lungs".  (ECF No. 1, p. 4).  Plaintiff alleges beginning in June of 2020 and continuing thereafter, Defendants "Denied me medical treatment an they refused me antibiotic for the infection on my lungs! With the Covid 19

8

that theer is putting my life at risk cause having an infection in my lungs Im more at risk of catching corona virus and having deadly permanent damage to my lungs." *Id.*   Plaintiff describes his official capacity claim as follows, "Stephen King, Loni Redfern Chealsey violated my rights by denying me medical treatment an possibly causing me bodly harm or perhaps even death 3 of my rights or more have been violated".  *Id.* at p. 5.

On January 6, 2021, Defendants filed a Motion for Summary Judgment arguing they are entitled to judgment as a matter of law because Defendants were not deliberately indifferent to his serious medical needs and there is no basis for official capacity liability.  (ECF No. 40).

On January 15, 2020, Plaintiff filed a Response to the motion arguing the results of his medical tests were not explained to him, Defendants "never…refer me to pulmonary specialist or respiratory specialist to ensure there wasn't a need for further treatment", "I received care or evaluation only when I filed a grievance or pushed my complaints to the point of almost combativeness", and the initial diagnoses of his condition was not followed up by a second opinion.  (ECF No. 59).  Plaintiff also submitted Statements of Disputed Fact.  (ECF No. 60).  He disputes he was prescribed tramadol for his lung infection.  Instead, he states this medication was for his injured shoulder.  *Id.* at p. 1.   He also disputes he was provided adequate care because he had a difficult time breathing on several occasions and was refused proper evaluation by qualified personnel to determine his status.  *Id.* at p. 2.  Finally, he states he disputes Defendants' statement of fact that no policy of SHP violated his rights because he has never been provided with a copy of SHP's policies.  *Id.* at p. 3.

### III. LEGAL STANDARD

Summary judgment is appropriate if, after viewing the facts and all reasonable inferences in the light most favorable to the nonmoving party, the record "shows that there is no genuine

dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp*., 475 U.S. 574, 587 (1986). "Once a party moving for summary judgment has made a sufficient showing, the burden rests with the non-moving party to set forth specific facts, by affidavit or other evidence, showing that a genuine issue of material fact exists." *Nat'l Bank of Comm. v. Dow Chem. Co*., 165 F.3d 602, 607 (8th Cir. 1999).

The non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586.  "They must show there is sufficient evidence to support a jury verdict in their favor." *Nat'l Bank*, 165 F.3d at 607 (*citing Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 249 (1986)).  "A case founded on speculation or suspicion is insufficient to survive a motion for summary judgment." *Id*. (*citing*, *Metge v. Baehler*, 762 F.2d 621, 625 (8th Cir. 1985)).   "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007).

## IV. DISCUSSION

### A.  Denial of Medical Care

The Eighth Amendment prohibition of cruel and unusual punishment prohibits deliberate indifference to the serious medical needs of prisoners. *Luckert v. Dodge Cnty.*, 684 F.3d 808, 817 (8th Cir. 2012).  This prohibition applies equally to pretrial detainees. *Butler v. Fletcher,* 465 F.3d 340, 345 (8th Cir. 2006).  To prevail on his claim of denial of medical care, Plaintiff must prove Defendants acted with deliberate indifference to his serious medical needs. *Estelle v. Gamble,* 429 U.S. 97, 106 (1976).  The deliberate indifference standard includes "both an objective and a

subjective component: 'The [Plaintiff] must demonstrate (1) that [he] suffered [from] objectively serious medical needs and (2) that the prison officials actually knew of but deliberately disregarded those needs.'"  *Jolly v. Knudsen,* 205 F.3d 1094, 1096 (8th Cir. 2000) (quoting *Dulany v. Carnahan,* 132 F.3d 1234, 1239 (8th Cir. 1997)).

To show he suffered from an objectively serious medical need, Plaintiff must show he "has been diagnosed by a physician as requiring treatment" or has an injury "that is so obvious that even a layperson would easily recognize the necessity for a doctor's attention."  *Schaub v. VonWald*, 638 F.3d 905, 914 (8th Cir. 2011) (internal quotations and citations omitted).  To establish the subjective prong of deliberate indifference, "the prisoner must show more than negligence, more even than gross negligence, and mere disagreement with treatment decisions does not give rise to the level of a constitutional violation.  Deliberate indifference is akin to criminal recklessness, which demands more than negligent misconduct."  *Popoalii v. Correctional Medical Services,* 512 F.3d 488, 499 (8th Cir. 2008) (internal quotation marks and citations omitted).  A plaintiff must show that an official "actually knew of but deliberately disregarded his serious medical need."  *Gordon v. Frank*, 454 F.3d 858, 862 (8th Cir. 2006).  However, intentionally denying or delaying access to medical care may constitute deliberate indifference.  *See Estelle,* 429 U.S. at 104-05; *Dulany*, 132 F.3d at 1239.

Defendants do not dispute Plaintiff's medical needs were serious.  Accordingly, the only question remaining is whether Defendants were deliberately indifferent to those needs.  The summary judgment record shows Plaintiff filed fifteen (15) medical requests between June 20 and October 16, 2020.[5]  During this time, Plaintiff was seen and evaluated by at least one of the Defendants on at least six occasions – most often on the same day Plaintiff's requests for medical

---

[5] In two of these requests Plaintiff was seeking copies of his medical records.  (ECF No. 60, pp. 23-24).

help were received.  In addition, Plaintiff was transported to the hospital for x-rays, he was prescribed three different pain medications, he underwent two CT scans, and was placed on medical observation at the MCDC.  At no time during his incarceration was Plaintiff noted to have fever or decreased oxygen saturation.  Moreover, there is no evidence to suggest Plaintiff ever contracted Covid-19 while housed at the MCDC nor is there any evidence Plaintiff suffered permanent lung damage.

It is clear from Plaintiff's pleadings he disagrees with the medical care provided by Defendants for his lung condition.  However, the law is clear Plaintiff's disagreement with Defendants course of treatment for his lung condition fails to state a claim for deliberate indifference.  *See Meuir v. Green Cnty Jail Employees*, 487 F.3d 1115, 1118-19 (8th Cir. 2007) (an inmate has no constitutional right to a particular course of treatment, and mere disagreement with the medical treatment he receives is not a basis for Section 1983 liability); *Lair v. Ogelsby*, 859 F.2d 605, 606 (8th Cir. 1988) (mere disagreement about which medication should have been prescribed does not constitute an Eighth Amendment violation).

Although Plaintiff has a constitutional right to adequate health care, he does not have the right to health care of his choice (i.e. a second opinion or input from a specialist).  Courts "hesitate to find an [E]ighth [A]mendment violation when a prison inmate has received medical care." *Smith v. Jenkins*, 919 F.2d 90, 93 (8th Cir. 1990).  Here, Plaintiff has not offered any evidence, other than self-serving allegations, to support his claim he was denied adequate medical care.  Although Plaintiff did not receive his prescribed medication on two occasions, there is no summary judgment evidence to demonstrate any of the Defendants intentionally withheld the medication.  The fact Plaintiff experienced a short delay before receiving pain medication does not create an actionable Eighth Amendment claim.  *Champion v. Kelley*, 495 Fed. Appx. 769 (8th Cir. 2012) (finding no

deliberate indifference against a nurse who dispensed medication to prisoner who did not receive two of three daily doses of pain medication on a certain day); *Gutierrez v. Peters*, 111 F.3d 1364, 1375 (7th Cir. 1997) (finding isolated delays in treatment did not support Eighth Amendment claim).

Accordingly, Defendants are entitled to summary judgment on Plaintiff's claim he was denied adequate medical care.

### B. Official Capacity Claims

Plaintiff also sues Defendants in their official capacities.  Under § 1983, a defendant may be sued in either his individual capacity, or in his official capacity, or claims may be stated against a defendant in both his individual and his official capacities.  *Gorman v. Bartch*, 152 F.3d 907, 914 (8th Cir. 1998).  Official capacity claims are "functionally equivalent to a suit against the employing governmental entity."  *Veatch v. Bartels Lutheran Home*, 627 F.3d 1254, 1257 (8th Cir. 2010).

When a government entity contracts with a third-party to fulfill a constitutional duty – such as providing medical care - official-capacity claims against the third-party's employees are treated as claims against the third-party itself. *See Cannady v. Cradduck*, 2016 WL 4432704, at *1-*2 (W.D. Ark. Aug. 18, 2016) (finding official-capacity claims against employees of a third-party medical provider are treated as claims against the company because Benton County contracted with the company to provide healthcare to County prisoners). To sustain an official-capacity claim against such an entity a plaintiff "must show that there was a policy custom, or official action that inflicted an actionable injury."  *Johnson v. Hamilton*, 452 F.3d 967, 973 (8th Cir. 2006) (involving a § 1983 claim against a prison medical provider). Thus, Plaintiff's official-capacity claims against Defendants are "functionally equivalent" to alleging their employer, SHP, had "a policy, custom,

or [took an] official action" that deprived him of constitutionally adequate medical care. *Veatch,* 627 F.3d at 1275; *Johnson*, 452 F.3d at 973.

Plaintiff has not alleged any policy, practice, or custom of SHP contributed to the alleged violation of Plaintiff's constitutional rights. Instead, he restates the ways he believes his constitutional rights were violated by the individual actions, or lack thereof, by Defendants. Accordingly, Defendants are entitled to summary judgment on Plaintiff's official capacity claims. *Id.*

## V.  CONCLUSION

For the reasons stated above, Defendants' Motion for Summary Judgment (ECF No. 40) is **GRANTED.**  Plaintiff's claims against Defendants Steven King, Loni Redfearn, and Chelsey Foster are **DISMISSED WITH PREJUDICE.**  A judgment of even date shall issue.

**IT IS SO ORDERED,** this 2nd day of March 2021.

/s/ *Barry A. Bryant*
HON. BARRY A. BRYANT
UNITED STATES MAGISTRATE JUDGE